

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERTO BAEZ** | **CIVIL ACTION** |
| versus | |
| | **NO. 03-1568** |
| **IMMIGRATION AND NATURALIZATION SERVICE, et al** | **SECTION "C" (3)** |

### ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment, which was originally set for hearing on June 6, 2005. (Rec. Doc. 95). In response, *pro se* Plaintiff Roberto Baez filed a "Notice of Objection" on June 16, 2005, claiming that while incarcerated he had been unable to conduct sufficient discovery to oppose Defendants' various grounds for dismissal. The Court granted additional time to respond until August 5, 2005. (Rec. Doc. 102). Having reviewed Defendants' Motion, Plaintiff's Opposition, attached exhibits, the Amended Complaint, and the applicable law, the Court hereby rules that Defendants' Motion for Summary Judgment be GRANTED.

**I.   Background**

The remaining Defendants in this matter - Drs. Richard D. Inglese, Caldwell, Dileo, Joe

1

Gautreaux and Warden K. Kendrick - were at all pertinent times employees of, or contracting physicians with, the Orleans Parish Prison ("OPP") in New Orleans, Louisiana. Mr. Baez was detained at OPP approximately from March 31, 2003 until at least August 2003[1] under the authority of the Department of Homeland Security ("DHS").[2] Although Plaintiff originally filed additional claims for declaratory and injunctive relief, these claims were dismissed.[3] (Rec. Doc. 39, 57, 60). Plaintiff subsequently amended his Complaint to assert the instant claim for monetary damages for an alleged Eighth Amendment violation that OPP was deliberately indifferent to his medical needs. (Rec. Doc. 64).

In his Amended Complaint, Plaintiff re-asserts factual allegations that prior to his transfer to OPP, he was examined by two physicians attached to penal institutions, who concluded that he needed surgery to repair a hernia. The first diagnosis allegedly occurred on September 11, 2002 in an unspecified Alabama jail. The second medical examination was conducted by Dr. Howard

---

[1] It is unclear when Plaintiff was transferred out of the OPP facility. As will be discussed below, Plaintiff was detained as of February 2004 at a federal facility at Yazoo City, Mississippi.

[2] Plaintiff, a non-citizen Cuban national, was deemed excludable under the immigration laws for a state conviction on narcotics trafficking charges. The grounds for his release are unclear from the record.

[3] In his original Complaint, Plaintiff and two others filed claims under 42 U.S.C. § 1983 against the Immigration and Naturalization Service ("INS"), Department of Homeland Security ("DHS"), OPP Warden K. Kendrick and others. On December 11, 2003, the Court dismissed with prejudice all claims lodged by co-Plaintiffs Nak Kim Chhoeun and Ibrahima Fall, and all claims against the DHS and INS. (Rec. Doc. 39).
Plaintiff had originally claimed that he had also suffered 1) a deprivation of his First Amendment rights to a vegetarian diet and a suitable place for prayer; 2) a violation of his alleged right to access to an adequate law library; and 3) a procedural due process violation that the OPP grievance procedure was inadequate. (*See generally* Rec. Doc. 8). After remanding Plaintiff's claims against Defendant Kendrick and others, the Court ultimately agreed with the Magistrate Judge that the claims for declaratory and injunctive relief were moot and ordered all claims against OPP officials in their individual capacity be dismissed without prejudice under Fed. R. Civ. P. 12(b)(6). (Rec. Doc. 57, 60).

Melton on October 9, 2002 at the Colquitt Regional Medical Center in Georgia pursuant to INS permission for a medical consultation. Documentation from the Georgia State Department of Corrections indicates that Dr. Melton recommended that Plaintiff undergo an operation to "repair [] the recurrent ileoinguinal transsection as treatment for the entrapment." (Rec. Doc. 110, Ex. A-4, A-8).[4] Although it appears Plaintiff was scheduled for surgery on October 28, 2002, DHS officials did not approve the procedure and it was not performed. (*Id.*, Ex. A-4, A-5). According to the Amended Complaint, Dr. Menton expressed concerns that if the condition were not surgically treated, "the hernia may grow and cause problems such as pain." (Rec. Doc. 110 at 5; Rec. Doc. 110, Ex. A-7).

After these two diagnoses and the aborted plan for surgery, Plaintiff alleges that he sought, and was denied, medical treatment for the purported hernia following a transfer to OPP on or about April 1, 2003. Medical records submitted by Defendant Dr. Richard Inglese, OPP Medical Director, indicate the following interactions between Plaintiff and OPP medical officials:[5]

On April 3, 2003, Plaintiff underwent a comprehensive health examination upon transfer to OPP.

On April 4, 2003, Dr. Caldwell signed off on an evaluation for surgical repair of a hernia.

On April 8, 2003, Dr. Gautreaux's notes indicate that Plaintiff had been sent to Charity Hospital in New Orleans for a "surgical consult" where he was diagnosed with "nerve entrapment."

---

[4] Plaintiff attached a series of separate documents to his Opposition (Rec. Doc. 110), identifying them all as "Exhibit A." For purposes of greater clarity, the undersigned has added sequential page numbers in the order of the documents as submitted.

[5] *See generally* Rec. Doc. 95, Ex. A. Defendants submitted Plaintiff's prison medical records, all designated as "Exhibit A" without further differentiation.

The notes also recount the recommendation of Tulane General Surgery (apparently by a Dr. Woeckner) that "pain management" was advised instead of surgery. Dr. Gautreaux's notes reflect that Plaintiff, though "reluctant" to take the pain medication, was willing to adhere to a "temporary plan." The treating physician indicated that a follow-up would be necessary.

On April 22, 2003, Plaintiff complained that his medication was not effective.

On April 24, 2003, Dr. Caldwell changed pain medication to Ultrim (for ten days).

On May 6, 2003, Plaintiff complained of a hernia and demanded narcotics according to the notes of Dr. Caldwell. Defendant-physician attributed the pain to "nerve entrapment" and increased his pain medication (Ultrim).

On May 12, 2003, Plaintiff complained that his medication should not have been decreased because he was a "criminal," despite no documented decrease in dosage.

On May 16, 2003, Plaintiff was treated by Dr. Dileo, who commented that Plaintiff was "argumentative and combative." The notes also indicate that persistent pain was "post-surgical,"[6] and not due to a hernia condition. Again complaining of the alleged ineffectiveness of the Ultrim, Plaintiff refused further treatment.

On June 30, 2005, Dr. Inglese, the Medical Director at OPP, conducted a review of Plaintiff's medical treatment in response to a grievance by Mr. Baez. In this report, Dr. Inglese recited Plaintiff's medical history that tracked the course of treatment as indicated above.

---

[6] While it is somewhat unclear to which surgery this description refers, OPP medical records indicate that Plaintiff had his left testicle removed sometime approximately in April 2000, and that he had suffered ingroinal pain since that time. (Rec. Doc. 95, Ex. A, "Inmate Progress Report 04-08-03").

Additionally, he mentioned that Plaintiff had undergone surgery ("left orchiectomy")[7] in April 2001, which caused the Plaintiff "residual pain." Dr. Inglese confirmed that Dr. Gautreaux had found no hernia, and that the physician at Tulane Surgery had discovered no hernia or other pathology. As to pain management, Dr. Inglese assessed Dr. Caldwell's examination on Plaintiff of April 24, 2003, explaining that the physician's choice to give Plaintiff Ultrim (and nothing stronger as requested by Plaintiff) was proper because narcotics are not prescribed at OPP pursuant to institutional policy. Dr. Inglese also mentioned Ultrim was again prescribed on May 7 despite the noted fact that the medication was often abused in prison and traded for recreational use among inmates. The May 16 treatment by Dr. Dileo was also discussed where Plaintiff allegedly refused Ultrim. Dr. Inglese concluded that after examinations by at least four OPP physicians, no pathology for hernia appeared to exist which would have necessitated surgical evaluation, and that Plaintiff's request for medical attention was possibly an effort to obtain narcotics.

On July 26, 2005, the Magistrate Judge in this matter authorized a medical examination to be held on July 11, 2003. Apparently because he was again to see Dr. Dileo, Plaintiff refused treatment at this time.

Pharmacy records indicate that during this entire period, all prescribed medication was actually dispensed to OPP.

In spite of this documentation, Plaintiff alleges that Dr. Gautreaux stated to him that he thought the inmate was a "fake." Plaintiff alleged that Dr. Dileo characterized him in the same way

---

[7] An orchiectomy is the surgical removal of a testicle. On-line Medical Dictionary, http://cancerweb.ncl.ac.uk/omd/contents/O.html. Dr. Inglese's report is thus consistent with the April 8, 2003 "Inmate Progress Report," except for the fact that it mentions the surgery as occurring two (and not three) years prior to Plaintiff's treatment at OPP.

5

when denying surgery and stronger (presumably narcotic) pain medication on May 16, 2003. Plaintiff also alleges that he suffered non-specific "humiliation" at the hands of these Defendants.

Plaintiff asserts in his Opposition that he was transferred to a federal facility at Yazoo City, Mississippi, apparently at some point prior to February 2004,[8] and received medical care at the River Region Medical Center in Vicksburg, Mississippi. As rebuttal evidence to Defendants' Motion, Plaintiff submits documentation indicating that Dr. Tony Chambers, the Clinical Director at Yazoo City, determined a need for hernia surgery on February 5, 2004 and authorized the procedure ultimately performed on February 19, 2004. (Rec. Doc. 110, Ex. A-1, A-2, A-3). According to the Plaintiff, the surgery ended the pain of "his hernia experience." (Rec. Doc. 64 at 5).

## II.    Standard of Review

A district court can grant a motion for summary judgment only when the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Automobile Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993,

---

[8] Neither party has submitted documentation of the exact date of the transfer or made representations about the circumstances under which Plaintiff left OPP.

996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First National Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24 and Fed. R. Civ. P. 56(e)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

### III.  Law and Analysis

Defendants move for summary judgment contending that under the undisputed and/or documented facts, Plaintiff cannot demonstrate that the OPP Warden Kendrick, Dr. Inglese and/or the other defendant-physicians were deliberately indifferent to his medical needs in regard to his hernia condition and the attendant pain such that Defendants are liable under the Eighth Amendment and § 1983.[9] In support of their claim, Defendants submit the OPP prison medical records of Mr. Baez (as detailed above) that Plaintiff received medical treatment for pain management numerous times between April 3, 2003 and July 11, 2003. Defendants argue that this evidence resolves all issues of material fact as to whether Plaintiff received reasonable medical attention, even if narcotics

---

[9] Defendants also argue in their Motion that summary judgment is proper as to other allegations contained in Plaintiff's original Complaint. These were the following: Mr. Baez allegedly suffered 1) a deprivation of his First Amendment rights to a vegetarian diet and a suitable place for prayer; 2) a violation of his alleged right to access to an adequate law library; and 3) a procedural due process violation that the OPP grievance procedure was inadequate. (Rec. Doc. 95 at 1-4 ). While these claims for declaratory relief were dismissed as moot, *see* Order and Reasons Part I n.3, the Court now dismisses these claims <u>with prejudice</u> because Plaintiff has failed to oppose Defendants' Motion for Summary Judgment as to these claims.

were not prescribed and surgery was not advised for the hernia. Plaintiff responds that there are unresolved issues of material fact as to preclude summary judgment on his claim. In support, Plaintiff submits rebuttal evidence that highlights the key facts that Dr. Menton at the Colquitt Regional Medical Center recommended surgery prior to Plaintiff's transfer to OPP and that Plaintiff ultimately underwent surgery for his hernia after being transferred from OPP to a different federal facility in Yazoo City, Mississippi.

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County*, 245 F.3d 447, 460 (5th Cir. 2001) (internal citations omitted). A plaintiff's showing of nothing more than a "difference of medical opinion" as to one course of treatment over another is insufficient to establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1996). *See also Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (affirming the dismissal of suit as frivolous where prisoner claimed medical personnel should have tried different methods of diagnosis and treatment); *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (noting that physician disagreement in treatment alone will not support a constitutional violation), cert. den'd, 519 U.S. 1126 (1997); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) ("Unsuccessful medical treatment does not give rise to a § 1983 cause of action. Nor does 'mere . . . neglect or medical malpractice.'") (citations omitted)).

Summary judgment is appropriate because Defendants' documentation of treatment, even as rebutted by Plaintiff's evidence that he later received his desired hernia operation, suggests that the OPP physicians and their counterparts at Colquitt Regional Medical Center and Yazoo City had

a reasonable "difference of medical opinion" regarding the proper course of Mr. Baez's treatment. This conclusion is borne out by the overall responsiveness of the OPP medical staff to Plaintiff's medical concerns: First, it is undisputed that Plaintiff was granted an evaluation for surgery on April 4, 2003 by Defendant Dr. Caldwell, which indicates the OPP medical staff was responsive to Plaintiff's condition. On April 8, Dr. Woeckner of Tulane Medical Center concurred in the diagnosis of Dr. Gautreaux (Charity Hospital) that Plaintiff had a "nerve entrapment" could be treated with "pain management" to which Plaintiff "reluctant[ly]" agreed. Altogether at least four physicians within OPP and its contracting medical facilities uniformly found no pathology of hernia and attributed Plaintiff's pain to the residual effect of surgery to remove testicle two (or possibly three) years prior. The record reflects that as Plaintiff's discomfort persisted, OPP medical staff attempted to modulate the pain management by changing prescriptions (from Motrin to Ultrim) and increasing the dosage in April and May. Follow-up examinations were also recommended, although none resulted in the surgery that Plaintiff desired. While the OPP medical staff presumably was aware of Dr. Menton's previous recommendation that hernia surgery be performed, the Court is persuaded by the Seventh and Ninth Circuit authority cited above that a reasonable difference in medical opinion does not give rise to § 1983 claim. *Accord Campbell v. Martinez*, 2003 U.S. Dist. LEXIS 23358 (May 14, 2003), aff., *Campbell v. Martinez*, 2004 U.S. App. LEXIS 8767 (5th Cir. Tex., May 4, 2004).

Plaintiff's rebuttal evidence - that doctors at both Colquitt Regional Medical Center (pre-transfer to OPP) and Yazoo City (post-transfer from OPP) recommended surgery - establishes at most that Defendants' course of treatment without surgery was negligent. The four-month-long course of treatment, with repeated visits to different physicians, does not suggest deliberate

indifference, but rather attentiveness. The medical attention may have been ineffective or ill-advised, but that does impose liability under the Eighth Amendment. *See Varnado*, 920 F.2d at 321 (no liability for doctor negligence or malpractice). Furthermore, Fifth Circuit authority also protects physicians and prison medical staff supervisors from liability in circumstances where a defendant's medical treatment fails to avert harm and the plaintiff-prisoner is later vindicated by success of alternative procedure. *Johnson v. Johnson*, 385 F.3d 503, 524-525 (5th Cir. 2004).

As far as the effectiveness of the pain management, Plaintiff cannot sustain an Eighth Amendment claim for similar reasons. As discussed above, OPP doctors agreed to change pain medications and increase dosages as Plaintiff's complaints persisted. In his review of Plaintiff's grievance, Dr. Inglese cited OPP policy that narcotics could not be prescribed to prisoners, presumably due to the risk of abuse or their use in contraband trade among the prison population. (*See* Rec. Doc. 95, Ex. A, "June 30, 2003 Review"). Despite a similar noted risk of abuse of Ultrim, Plaintiff was nevertheless prescribed this stronger medication on April 24, May 6, and May 16, 2003. This indicates that Plaintiff consistently received pharmaceutical treatment for pain management to the maximum extent permitted by prison policy. *See Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981) ("In balancing the needs of the prisoner against the burden on the penal system, the district court should be mindful that the essential test is one of medical necessity and not one simply of desirability"). Even if no narcotics were prescribed, therefore, pain management provided by OPP was reasonable in the context of a penal institution.

Defendants' documentation of the Plaintiff's four-month-long course of treatment demonstrates that the OPP medical staff repeatedly attended to Plaintiff's condition even if surgery was not performed. Plaintiff's rebuttal evidence - that the respective medical staffs at Colquitt

Regional Medical Center (pre-transfer to OPP) and Yazoo City (post-transfer from OPP) both recommended surgery - does not detract from the central fact that the OPP medical staff was responsive, and hence not deliberately indifferent, to Plaintiff's medical condition. This rebuttal evidence suggests at most that Defendants were negligent in not pursuing hernia surgery, which is insufficient under the Eighth Amendment standard in *Gamble*. Accordingly, summary judgment is proper where Plaintiff, as non-moving party, has failed to "produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom*, 47 F.3d 1459 at 1462.

### III. Conclusion

For the foregoing reasons, IT IS ORDERED that Defendants' Motion for Summary Judgment be GRANTED. All remaining claims in the above-captioned matter are hereby DISMISSED WITH PREJUDICE.

Baton Rouge, Louisiana, this ____17____ day of October, 2005.

_____
Helen G. Berrigan
United States District Judge